NOT DESIGNATED FOR PUBLICATION

No. 128,915

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS, *ex rel*. SECRETARY OF DEPARTMENT FOR CHILDREN AND FAMILIES,
o/b/o A.J.C., a Minor Child, and Y.Y.T., Necessary Third Party,
*Appellants*,

v.

A.J.C.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; KATHLEEN M. LYNCH, judge. Submitted without oral argument. Opinion filed July 17, 2026. Reversed and remanded with directions.

*Peggy S. Bisping*, of Wichita, for appellants.

*Stanley R. McAfee*, of Kansas City, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

ISHERWOOD, J.: The Kansas Department for Children and Families (DCF) brings this appeal to challenge a decision by the district court that permitted A.J.C. to revoke the voluntary acknowledgment of paternity (VAP) form he signed with respect to Baby A., one year beyond the statutory deadline that a man had for pursuing such causes of action. According to DCF, where the district court granted A.J.C.'s request to revoke the VAP one year beyond the statutorily mandated deadline by which such revocations must be pursued, simply because the judge believed that applying the deadline to A.J.C. was unfair given the facts and circumstances of his case, the decision lacks any legal

1

foundation and cannot be permitted to stand. We agree. The parties were before the district court for the limited purpose of securing the child support enforcement order required as a result of Mother's request for Temporary Assistance for Needy Families (TANF) benefits. In permitting the proceeding to go forward as an untimely paternity determination, the district court acted outside the scope of its authority. The decision of the district court is reversed, and the case is remanded with directions to resume the child support enforcement proceedings that were unlawfully stymied.

FACTUAL AND PROCEDURAL BACKGROUND

Baby A. was born in the fall of 2022 and experienced medical complications during those early days that prevented the administration of a paternity test as requested by A.J.C. Mother assured A.J.C. that he was the child's natural father, so he agreed to sign a VAP form.

Approximately three months after Baby A.'s birth, a home genetics test contradicted Mother's earlier assurances to A.J.C. and revealed that he was not the baby's father. According to A.J.C., when he contacted Mother concerning the results of his test, she admitted that she was aware of the truth concerning Baby A.'s parentage when the child was born. This revelation prompted A.J.C. to cease any further contact with Mother and Baby A., but did not induce either adult to pursue a revocation of the VAP.

In early 2024, Mother applied to receive state assistance with child and medical support through TANF. When such applications are filed, the mother is statutorily mandated to assign her child support rights to DCF. In accordance with the standard procedure for those circumstances, the agency then filed a petition on behalf of Mother and Baby A., with A.J.C. named as the legal father, for the sole purpose of obtaining a child support enforcement order.

2

A.J.C. responded to DCF's petition and identified Baby A. as his only child but also noted that a paternity test established that he was not Baby A.'s natural father. The child support enforcement hearing officer initially granted DCF's petition and ordered A.J.C. to provide child support and arrears.

A.J.C. secured the assistance of an attorney who moved for reconsideration of the hearing officer's decision and requested a paternity test. Counsel reiterated that A.J.C. was not Baby A.'s natural father and was simply unaware that he needed to take affirmative measures to revoke the VAP after his earlier home genetics test revealed he was not the baby's father. Additionally, A.J.C. did not know that he was required to pursue a revocation of the VAP form before Baby A. turned one year old. A.J.C. also offered the alternative argument that Mother "fraudulently led [him] to believe that he was the biological father of the child when she knew he was not" and that she verified the natural father's paternity. DCF countered that A.J.C. was properly designated as Baby A.'s legal father, given his completion of the VAP form, and simply failed to rescind it within the one-year deadline.

The hearing officer concluded that "equity should appl[y], especially in light of [Mother]'s admission that [A.J.C.] is not the biological father." The earlier child support order was set aside, and the hearing officer determined that a paternity test was no longer necessary. DCF appealed to the district court.

A.J.C. argued his case to the district court in much the same way. His counsel again explained that Mother admitted to the hearing officer that A.J.C. was not Baby A.'s natural father, she was aware he was not the father when he signed the VAP form, and that she and the natural father presently lived together. Counsel asserted that Mother fraudulently induced A.J.C. to accept paternity and sign the form.

3

DCF advised the district court that A.J.C. learned the truth of Baby A.'s parentage within the one-year statutory deadline and simply neglected to take any action to revoke the VAP form. Accordingly, it was without question that he was well outside the available window for pursuing such relief.

The district court acknowledged reading *State ex rel. Secretary of DCF v. Manson*, 56 Kan. App. 2d 1241, 446 P.3d 1074 (2019), but concluded that it was readily distinguishable from A.J.C.'s case. It specifically found that "as a district court judge [she had] the discretion to alleviate a great injustice," and that its decision might be different if A.J.C. knew the truth "from the very beginning." The judge went on to find that the fact Mother was only 19 years old and A.J.C. was 20 years old was also a compelling factor, and that it may have contributed to their lack of understanding or appreciation of the legal significance of signing the VAP form.

DCF asserted that under *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 392 P.3d 68 (2017), biology was not a prerequisite to signing a VAP. The district court recognized *Smith* but determined that, like *Manson*, the case was distinguishable. The judge concluded that A.J.C. and Baby A. had not established a parent-child relationship and ordered that A.J.C.'s name be "removed [from the birth certificate], and the proper father . . . be put on. And the proper father will then be responsible for the care of the child."

DCF now brings its case before this court for a determination of whether the district court erred in (1) failing to enforce the one-year time limit placed upon actions for revocation under K.S.A. 23-2209(e); and (2) failing to follow the holdings of *Manson* and *Smith* wherein the appellate courts found that a parent who signs a VAP form and does not timely revoke it is permanently established as the legal parent and thus obligated to pay child support.

4

DCF argues that (1) A.J.C.'s attempt to revoke the VAP was time-barred under K.S.A. 23-2209(e); (2) the district court's interpretation of the flexibility of K.S.A. 23-2209 is inconsistent with the Legislature's intent; and (3) a VAP that is not timely revoked establishes a legal parent designation and renders that person responsible for child support regardless of biology.

Resolution of this issue requires an interpretation of the Kansas Parentage Act, K.S.A. 23-2201 et seq., alongside the Social Welfare Act, K.S.A. 39-701 et seq. Statutory interpretation issues constitute "a question of law subject to unlimited review." *Smith*, 306 Kan. at 48. When addressing such questions, reviewing courts apply "a well-established rubric" that allows legislative intent to serve as the guiding principle. 306 Kan. at 48.

In reviewing this case, we believe its precise procedural posture in the district court when the ruling was entered is a critical factor. The record reflects that A.J.C. signed the VAP form in 2022 at the time of Baby A.'s birth. From a legal standpoint, when he affixed his signature to that document, "a permanent father and child relationship" was created that could only be dissolved through a court order. K.S.A. 23-2204(b)(1). To the extent an issue arose that prompted A.J.C. to question his decision, the law in effect at the time required him to pursue revocation of the VAP form before Baby A. turned one year old. K.S.A. 23-2209(e). There were no exceptions available to A.J.C. that enabled him to pursue relief outside of that one-year time frame. It is clear from the record that when Baby A. was three months old, A.J.C. learned that he was not the baby's father. What is also clear is that he chose not to take any action in response to that development, the one-year deadline lapsed, and as a result of that delay his window to pursue revocation closed. Neither K.S.A. 23-2204 nor K.S.A. 23-2209, the key statutory provisions that outline the operation of the VAP form, allow an adult party to a

VAP to bring a revocation action after one year—for any reason. See *Smith*, 306 Kan. at 54 (A different inquiry applies with respect to this issue when the parties are younger than 18 when the acknowledgment is signed.). We traveled that analytical path simply to illustrate that the law in effect when the district court entered its decision firmly stated that once executed, a VAP created a permanent father-child relationship that obligated the father to support the child, unless revoked within one year of the child's birth. K.S.A. 23-2204(b)(1). Thus, when Baby A. turned one year old in 2023, the law viewed A.J.C. as the child's father.

In 2024, when Baby A. was approximately one and a half years old, Mother applied for financial assistance from the State. When a parent applies for or receives public assistance such as benefits pursuant to TANF, including medical assistance or childcare subsidies, that parent's child support rights are automatically assigned to DCF by operation of statute. K.S.A. 2023 Supp. 39-709(d). That assignment allows the State to seek reimbursement for the assistance it expended on the child's behalf. *Grassi v. Grassi*, 8 Kan. App. 2d 610, 614-15, 663 P.2d 312 (1983); *Sterling v. Mann*, 4 Kan. App. 2d 520, 522, 608 P.2d 1038 (1980).

As a result, Mother's request for financial assistance triggered a child support enforcement hearing. It is this proceeding that brought Mother and A.J.C. before the hearing officer and, thereafter, the district court. Those hearings are conducted to fulfill the obligation owed by the State, as a result of its participation in a federal assistance program, to attempt to recoup expenses from the absent parent who is obligated to support the child but has neglected to do so. *State ex rel. Secretary of SRS v. Castro*, 235 Kan. 704, 710, 684 P.2d 379 (1984).

The enforcement hearing is also the mechanism through which the State exercises its assigned rights to establish or modify support orders and enforce outstanding payment obligations. K.S.A. 39-755(a). In essence, the State steps into Mother's shoes and may

assert any claims that would have otherwise been available to Mother, or could have been raised in an action brought by the parent directly. See *Castro*, 235 Kan. at 710-11.

When DCF brings an enforcement action *and paternity is contested*, the district court must order genetic testing upon motion of the Secretary or any party *but only if paternity is truly in issue*. K.S.A. 23-2212(a) ("Whenever the paternity of a child *is in issue* in any action or judicial proceeding in which the child, mother and alleged father are parties, the court, upon its own motion or upon motion of any party to the action or proceeding, shall order the mother, child and alleged father to submit to genetic tests." [Emphasis added.]). If an obligor makes a good-faith assertion that he is not the father, as opposed to merely attempting to advance a frivolous defense, the district court has the option to issue a ruling regarding paternity or adjourn the proceeding until paternity is resolved. *Florida Dept. of HRS v. Breeden*, 21 Kan. App. 2d 490, 494, 901 P.2d 1357 (1995).

Thus, while the statutory framework expressly authorizes DCF to move to establish paternity within a proceeding to enforce a parent's support obligations in connection with TANF benefits, paternity *must first* be an outstanding issue. See K.S.A. 39-755(a); K.S.A. 39-756(a)(1). That was not the status of A.J.C.'s case when the parties appeared before the district court because A.J.C. had forfeited his opportunity to challenge Baby A.'s paternity.

We briefly return to the Kansas Supreme Court's opinion in *Smith* for the support it lends to the conclusion that A.J.C.'s paternity was not legitimately at issue during the child support enforcement hearing, such that neither the hearing officer nor the district court judge could enter a ruling on that matter. The *Smith* court summarized the rule in the following way:

"Reading K.S.A. 2016 Supp. 23-2204 and 23-2209 together, after the child's first birthday, neither the man signing the VAP nor the mother can attempt to revoke the VAP, attempt to obtain a contrary determination of the father and child relationship by rebutting the presumption that arises from the VAP, or attempt to establish the existence of a conflicting presumption through, for example, genetic testing. When a man and a mother sign the form they agree and acknowledge that the VAP creates a 'permanent father and child relationship.' K.S.A. 2016 Supp. 23-2204." 306 Kan. at 58.

Five years after *Smith* was issued, a case came before this court that was strikingly similar to A.J.C.'s. In *State ex rel. Secretary, Department for Children and Families v. Cares*, No. 121,976, 2021 WL 2386031 (Kan. App. 2021) (unpublished opinion), the Secretary of DCF filed a child support enforcement action against Cares, and during the hearing Cares requested that the district court void the VAP he signed four years earlier. Cares did not dispute that he signed the form, he simply claimed there were two reasons that his acknowledgement could not be considered voluntary. First, because he was intoxicated when he affixed his signature to the form and, second, because M.M.C.'s mother led him to believe that no one else could have been the child's biological father, when that was untrue. The district court concluded that Cares failed to provide a sound legal basis to set aside the VAP that he signed four years earlier. Accordingly, it found that Cares had the obligation to provide support for M.M.C. from March 2019 forward. 2021 WL 2386031, at *1.

Cares appealed the denial of his request, and this court affirmed the district court's decision. As support, our court summarized the language set out under K.S.A. 23-2209(e) that directed its conclusion:

"In K.S.A. 2020 Supp. 23-2209(e), the Kansas Legislature sets out a process and timeline for signatories to rescind voluntary acknowledgments of paternity. Pertinent here, the statute provides they may seek to rescind acknowledgments up to one year after the child's birth 'based upon fraud, duress[,] or material mistake of fact' unless they act within 60 days after signing the documents. K.S.A. 2020 Supp. 23-2209(e). The statute,

8

thus, appears to create a safe harbor for 60 days after a person signs an acknowledgment of paternity, permitting recission without cause during that time. Outside of that window, the signatory is limited to bringing an action on or before the child's first birthday and must prove at least one of the statutory conditions to rescind. *The statute includes no provision for recission if both of those time periods have lapsed—that is, the child has turned one-year old and the acknowledgment has been in effect for more than 60 days.* Factually, that's where Cares stood when he challenged his voluntary acknowledgment of paternity for M.M.C." (Emphasis added.) *Cares*, 2021 WL 2386031, at *1.

Our court found that the rule is clear and prohibited Cares from rescinding the voluntary acknowledgment of paternity he signed four years earlier "as some sort of defense to this child support action" because by the time of the support enforcement hearing "recission was a legal impossibility." 2021 WL 2386031, at *2. Stated another way, Cares' acknowledgment conclusively established paternity and his corresponding responsibility to provide support for M.M.C. This court specifically determined that the fact Cares "might not be M.M.C.'s biological father is immaterial for [the child support enforcement] proceeding." 2021 WL 2386031, at *2.

Shifting our focus back to A.J.C.'s case, it is evident from the record of the proceeding before the hearing officer that A.J.C. learned the truth of Baby A.'s parentage when the child was three months old. We return to the pertinent language of K.S.A. 23-2209(e) (Self 2023) to clarify A.J.C.'s options *at that time*:

"(e) Except as otherwise provided in this subsection, if an acknowledgment of paternity pursuant to K.S.A. 23-2204, and amendments thereto, has been completed *the man named as the father . . . may bring an action to revoke the acknowledgment of paternity at any time until one year after the child's date of birth*. The legal responsibilities, including any child support obligation, of any signatory arising from the acknowledgment of paternity shall not be suspended during the action, except for good cause shown. . . .

9

"The person requesting revocation must show, and shall have the burden of proving, that the acknowledgment of paternity was based upon fraud, duress or material mistake of fact unless the action to revoke the acknowledgment of paternity is filed before the earlier of 60 days after completion of the acknowledgment of paternity or the date of a proceeding relating to the child in which the signatory is a party, including, but not limited to, a proceeding to establish a support order." (Emphasis added.)

Thus, when A.J.C. learned the truth regarding paternity, he was beyond the 60-day period that permitted him to rescind the form without cause. Instead, he had transitioned into the territory that required him to prove fraud, duress, or a material mistake of fact, but that avenue of possible relief was only available to him "until one year after [Baby A.'s] date of birth." K.S.A. 23-2209(e). There were no additional opportunities available beyond that one-year mark "regardless of what cause [A.J.C.] might claim or be able to prove." *Cares*, 2021 WL 2386031, at *2.

A.J.C. executed a VAP to attach his name to Baby A.'s birth certificate and took no initiative to rescind the form within the allotted one-year period. This single fact determines the outcome of this case because it clarifies that the sole issue before the district court when the parties appeared before it was to address the enforcement of child support. From a legal standpoint, under K.S.A. 23-2209(e) (as passed in 2014 and the version in effect at the time of these proceedings), A.J.C. was the legal father of the child and had lost his opportunity to challenge his paternity. In much the same vein as the *Cares* court noted about the hearing granted by the district court in that case, "[f]or reasons that aren't entirely apparent, the district court afforded [A.J.C.] an evidentiary hearing to challenge the signed acknowledgment." 2021 WL 2386031, at *1.

In light of the facts, circumstances, and the law in effect at the time, the singular issue that the district court had the authority to address was the child support enforcement order requested by DCF. Accordingly, this case is reversed and remanded for the district court to conduct a new proceeding in that regard. This court is aware of the recent

10

amendment to K.S.A. 23-2209(e) that went into effect July 1, 2026. That amendment was not part of the analysis that guided our resolution of this case, and this opinion should not be interpreted as either advocating for or cautioning against the applicability of the amendment when district court proceedings resume in this case.

Reversed and remanded with directions.

* * *

CLINE, J., concurring: I concur in the result.

11